Thank you, Greg. Good afternoon, Council. Thanks for being with us this afternoon. If at any point you have trouble hearing us or seeing us, just raise your hand and let us know. So this is case number 22-1879, Vndel-Medina v. Atty Gen USA. Ms. Cain, whenever you're ready. Thank you, Your Honor. Respectfully, I believe we requested that the oral arguments proceed with Mr. Neumann arguing the jurisdiction issue first. That's fine. Mr. Neumann. We don't have a real problem with jurisdiction, do we? I mean, you all admit that the case is not barred, that we can hear it on the merits. You have some differences of opinion, but that's something if we decided it would be dictum. And do we really want to spend our time worrying about dictum? The question, I think, is when we send the case back, should we send the case back? Can we affirm the decision on the merits of the BIA or should we send it back? And I would focus the argument on that point, frankly, myself. Understood. But Mr. Neumann, your views? Thank you, Judge Estrepo. So I'm here to argue only about the jurisdictional point. I'm happy to do so if the court would like me to. And if the court would prefer to move to the merits, certainly happy to turn it over to Ms. Cain. But what is, what are the jurisdictional issues? In Dauphine, you both admit that the petition is timely. And that being the only thing of issue in this case, anything else we say would be purely hypothetical or dictum, wouldn't it be? Well, let me ask Mr. McManus, do you agree that everybody's on the same page, so to speak, with respect to jurisdiction? Thank you, Your Honor. I do agree with that in terms of we're talking about timeliness and finality of the agency's decision here. The court's jurisdiction really was never in question. The question is, has petitioner filed a timely petition with regard to the withholding only determination? And again, Judge Roth is absolutely right. The parties are all in agreement on that. But I do think it's important for the court to address that issue because it has not yet issued a precedential decision. It has its unpublished decision in Duenas adopting the party's position. We don't give advisory opinions. If the issue isn't before us, the court, any decision to give in that would be dictum. And it would be no more influential than your non-precedential opinion, right? Is it just because there's no controversy, Your Honor, or simply because it? Well, it's not because there's no controversy. In this case, there's no need to have a controversy because everyone agrees that the petition is timely. But that's true, Your Honor. But that issue has now divided the circuit courts. And so for this court to address it. The appropriate case must come up before this court before we decide it. But how can we decide an issue that is not relevant to this court just because you want to hear from the Third Circuit? But again, Your Honor, I'm not sure that it's accurate to say that it's not relevant. Clearly, whether the court can entertain a timely petition is a fundamental threshold question. You are arguing that the opinion is timely. No one is arguing that the petition for review is timely. No one's arguing that it isn't timely. So I don't see where there is any opposition to be dealt with. Well, maybe if I could get in on this, you know, I mean, what we're dealing with here is it seems that there's two tiers to the argument. The first tier is it is one of statutory construction. This circuit has issued two different NPOs on on statutory construction. And and we've got we've got a circuit split going on in terms of what constitutes finality and what doesn't. It may be that the parties now in this one instance agree on a statutory construction. But our duty, like the duty of all courts, is to say what the law is. And when it comes to a statute, I don't think we can just accept what the parties agree a statute should mean. And so the first thought is, even if even if we do begin. So if there's any doubt that both parties are kind of all the parties are telling us something about statute, that's not that's an inconsistent or an improper reading of the statute. Then we get to the the primary importance of the jurisdictional issue. Because if if it just so happens that a withholding order is not when we start finality, a denial of a withhold a relief on a denial withholding only proceeding is not when we start the clock and that we should start the clock at an earlier time. Either the the reinstatement order or the original order. Then the question becomes a very big significance of jurisdiction, because nobody wants to start it in an earlier time. So why should we be bothering with this issue in this case, shouldn't this issue, await a case where it is an issue that is relevant to the decision, rather than just desire to to decide this issue because a bunch of other circuits. Well, respectfully, your honor, I might if I might I'm sorry, I beg your pardon. If that question was meant for me or judge tips, I might just offer that the reason it's important is because as judge pointed out, we're talking about statutory construction. And the court has an obligation to convince itself of its own jurisdiction at the threshold. And again, although the parties here are simpatico this issue itself has divided the circuit courts and to your point about it not being relevant in this problem, not your problem. Perhaps your honor that's that's fair. But the point being, it's unlikely it's extremely unlikely that this will ever become a problem for the court because the parties are in agreement. The government has now consistently taken the position it is taking in this case, in every circuit court, we've lost that issue of the parties collectively have lost that issue at least twice. But the government and petitioners council and the amici are all in agreement across the circuits. And so, just because this case may not have a live controversy with respect to that discrete issue. It doesn't mean that it's not an important question for the court to answer in this case. And I will point out your honor this court sat for another argument in November, addressing the same issue and has held multiple cases in abeyance for decision in that case. I believe Judge Roth you were on that panel that's in strepo that case that we cited in our brief. And again, so I don't know that it's fair to say that this issue is not ripe for consideration in the context of this case simply because the parties are in agreement. I'm sorry I'm not sure if I'm connecting with you. I think I understand your point. Why don't we go ahead and I think that Judge Roth fits and I can untie this not amongst ourselves. But why don't we go to the merits that, how about we go to the merits, Miss Miss Kane. Certainly, your honor. Good afternoon may please the court before I begin speaking to the merits of this case, I would like to request to reserve two minutes for rebuttal. And actually let me actually clarify that if we're not hearing from Mr. Newman, I had handed over a portion of my time to him to address the jurisdictional issue so I am going to assume that I would be. I'd at least like to hear a little bit on the jurisdictional issue at some point in time because I think that if this court rules against the consensus of the parties on what the statute means and we're allowed to do that that's not an article three case for controversy thing, then the only thing that's going to save you on the merits is to say that the statutes not jurisdictional. And so I think that it's very common for a court to look at it option one a for the parties and then option one be. So I don't know that this is the sort of instance we can go in whatever order, but but but I do think that there's merit in teasing out what constitutes both option one a and one be in terms of past the victory. When you're fine. I'll tell you what judge fits if you have jurisdictional issues I'm assuming Mr Newman's in a position to answer those questions so why don't we just go ahead. We have time this afternoon so why don't we just move forward. And I'm sure that Mr Newman and Mr McManus can answer the jurisdictional issues that Mr. Judge tips has that work for you judge tips. That's fine. Great. Well, thank you, your honors and may it please the court. Harrison Newman of Covington and Berlin as court appointed amicus curiae. We have two related jurisdictional arguments and addressing this course amicus appointment order. First, reinstatement orders become final for purposes of judicial review under section 1250 to a one only at the conclusion of withholding only proceedings and second section 1250 to be one's time bar imposes a non jurisdictional claim processing. I'll start with finality which is the order we used in our brief. For three reasons, reinstatement orders become final for purposes of judicial review under 1250 to a one only at the conclusion of withholding only proceedings. First, this is the plain ordinary meaning of the statutory text final, as it is used in 1250 to a one. Second, this understanding is the only one that harmonizes the statutory structure as a coherent scheme. And third, this is the existing understanding of finality for purposes of judicial review across analogous immigration context, the strong presumption of judicial review of agency action, yet further confirms this meeting. First, turning to the text 1250 to a one provides for judicial review of a final order of removal. As this court has held a reinstatement order is an order of removal for purposes of judicial review under 1250 to a one. After after we held that though, you know the Supreme Court came out with, or at least, you know, the Supreme Court recently come out this Johnson case which seems to suggest that final orders of removal are distinct from withholding only or denials of withholding only relief that's that's justice Alito, he is pretty emphatic about that. And so, if, if final isn't the keyword. But order of removal is the key phrase such that order of removal is distinct from a withholding only order, order, then, then really, really your text breaks. So to be clear, we don't argue that a withholding only order is a final order of removal. What we argue is that the reinstatement order, which this court has recognized is an order of removal becomes final at the conclusion of the withholding only Now, we take that from the text we take that from the broader context of the INA and from the existing understanding of a finality in immigration context. So, first, I think that the definition of final does ultimately sort of control the analysis here for that very reason, which is that it's the finality of the order of removal, which is the reinstatement order. And so we look first to the statutory definition of final, but that doesn't address reinstatement orders. This court has held in Kuzan at the definition of finality for purposes of deportation orders doesn't control the analysis of finality for an order of removal. And the statutory definition ties finality of deportation order to the end of the BIA's possible review period, but there is no possible BIA review period for a reinstatement order. So Kuzan recognized that the statutory definition of finality doesn't exclude other triggers for finality. And here we're arguing that indeed as Kuzan previewed, this is another instance of a trigger for finality beyond that definition that doesn't apply here. Similarly, the regulatory definition also doesn't apply as we discuss in our briefs. So in the absence of an applicable statutory and regulatory definition, courts give a statutory term its plain and ordinary meaning. We look to the dictionary definition of final, the definition ordinarily applied to agency action, and the civil litigation definition. And all of those understandings, which we discussed at greater length in our brief, suggests that finality occurs whenever there's no additional agency adjudication yet to occur. So that would be at the conclusion of the withholding only proceedings. So the most obvious definition, at least to me, would be the APA's definition and the Bennett v. Speer articulation of the APA's definition because this is still an administrative proceeding, it's not civil litigation yet, it's not necessarily a dictionary thing. But there the key phrase was final agency action. And agency action encompasses a lot of action. Agencies can do many, many regulatory things. And so when you want to look at finality, you begin to look at the confirmation of their decision making and rights and obligations being determined. But the modifier in 1252B is not final agency action. The modifier in 1252B is final order. It's much narrower. So why should we use the APA's incredibly broad definition that is trying to deal with all sorts of agency action to something that doesn't say agency action, it just says final order of removal? So I think this ultimately goes to the nature of what a removal order actually is. And there's sort of two determinations at play here. And they play out differently in different contexts and in different cases. So the first determination that the agency makes is that of removability, which is whether the alien may be removed from the United States. And that determination has nothing to do with any specific country. And so when there's a final agency determination of removability, that's when, as the court held in Johnson v. Guzman-Chavez, I refer to it as Guzman-Chavez, that is when the agency has concluded its determination on removability. And so at that moment, the mandatory detention statute kicks in. There's the second determination then, which is what's ultimately relevant here when the full agency process concludes, which is that country-specific portion of it. Now, we tie it to the statutory withholding claim, because I'm happy to talk about Nasrallah. Nasrallah sort of takes the CAT claim into a different area. So the CAT claim doesn't affect finality for purposes of judicial review. And we don't argue that it does. But the statutory withholding claim is distinct from the CAT claim for a couple of reasons. So first, the statutory scope of judicial review of final removal orders includes statutory withholding claims. And this is a key point that the Second and Fourth Circuits, which are the outlier circuits on this circuit split, they didn't even cite the provision I'm about to discuss here, 1252b4, and they didn't address sort of how their interpretation accommodates this provision. I think that was an oversight there that I'd like to talk about right now. So 1252b is entitled Requirements of Review of Orders of Removal, and it supplies various requirements with respect to review of an order of removal under A1, A1 being the final order of removal. B4 defines the scope and standard for review of an order of removal to include statutory withholding terms. Now, it does so in an oblique way by referencing 1231b3c, 1231b3 being the statutory withholding provision. No doubt, it's not the most direct reference. But as we know, as this court is well aware, the INA uses cross-references in a variety of ways, perhaps not a model of clarity at some points. Nonetheless, by referencing that very statutory withholding provision, the INA is expressly stating that the scope of judicial review includes statutory withholding claims. And so that contrary definition of finality that the Second and Fourth Circuits have offered by cutting off judicial review of statutory withholding claims, they're effectively contravening the congressionally defined scope of judicial review here. Now, it's important to also note, just for tying it all together here, that statutory withholding claims are able to be reviewed here alongside the, excuse me, Your Honor, I see my time is up. If you can just finish up this line here, and then we'll ask Mr. McManus for his insight. Great, happy to do that. So the INA Zipper Clause allows this court, and in fact sort of consolidates review and requires this court to review that distinct statutory withholding determination, which itself is not a final order of removal, alongside that final order of removal, which is the reinstatement order. So they sort of consolidate together and they form a single package in one petition for review before this court. Mr. McManus. Thank you, Your Honor. May it please the court. I just want, I will certainly just piggyback on everything Mr. Newman said and also try and address some of Judge Fipp's questions by specifically pointing out that Duenas, again the decision, the unpublished decision discussed in our supplemental brief, addresses a lot of these issues and it's footnote six where the court drew an analogy between the APA and the Bennett v. Sphere definition of finality and the consensus view among the circuit courts about finality in the judicial review context for purposes of these analysis is that they focus myopically on a definition of administrative finality, which this court has recognized can and can be and is different than the definition of finality for purposes of judicial review under 1252. Again, that's discussed in Duenas and it's also discussed in our brief. And so what you're left with, Your Honor, is essentially a line of cases dating back about a decade that have established this consensus view of finality in this context. And this court's precedent basically would have to be undermined or overturned by Johnson or Nasrallah in order for the court to diverge from that. And as we explained, and I think as the amici explained and petitioner explained in our supplemental briefing, neither Nasrallah nor Guzman Chavez answered the relevant finality question that's presented before the court in this case. And again, essentially, the second and fourth circuits have overread those decisions and tried to sort of by proxy apply the definition of finality that Mr. Newman discussed at the outset of his presentation, which doesn't necessarily align with these, again, sort of unique expedited administrative proceedings, whether it be reinstatement or the final administrative removal orders that are sometimes issued in cases involving aggravated felonies. And so, ultimately, the government's position is that the status quo is neither broken nor in need of fixing. Can I just ask a question here? Is there any tension between our holdings in Bonilla and in Kuzan? You know, Bonilla footnote four suggests that a withholding only order is a final order. And then Kuzan seems to suggest that the definition of the deportation orders, the final deportation orders is not the same thing that we're going to use for the analysis and a finality of an order of removal. So, you know, are we in a situation where if Bonilla began to rely on something that Kuzan said it couldn't, can we follow, can we still follow Bonilla? I'm not sure. Well, and to be clear, your Honor, Bonilla was a reasonable fear case. I think that's right. And Galea Figueroa, which I think is one of the more recent decisions from this court, is a withholding only case. But I think those decisions, if I'm not mistaken, don't really elaborate on the sort of determination that those are reviewable final orders. And to your point of building on Kuzan, they may sort of lie the distinction between a final order as it's defined in the statute and a order that becomes final with further administrative proceedings. And I think, again, this goes back to the point that these unique sort of processes afforded to certain subcategories of non-citizens aren't neatly fit into the sort of finality or removal order box. You know, that definition at 1101A47 that talks about final orders of removal was enacted two years before this reinstatement and reasonable fear withholding only proceedings were created, first by statute and then regulation. And so it doesn't, there's really not a correlation between the two. I think those cases, you know, cases like Bonilla and Galea Figueroa are good enough for what they are, which is to say, you know, to sort of show the court's understanding, you know, in line with the consensus that a decision following a reinstatement order only becomes final and reviewable once the agency proceedings have been created. Mr. Newman talked about the culmination of proceedings. And again, this goes back to Judge Phipps, your question about the APA's definition. It's only when all of the agency proceedings have ended that you can say a decision is final for purposes of review. And this court's current view and the consensus view, other than the two outlier circuits, aligns with that understanding. Here we are saying that the court should take review of a decision that is ultimately final once everything is done, once the agency has completed its review. And in the unique context of reinstatement orders, that is either when, in the case of a non-citizen who expresses a fear of returning to his home country, it's when the reasonable fear of withholding only proceedings ends. So just to tease this out, you're talking about the two outlier circuits. We have an NPO split a little bit in our circuit, too. But a little bit is because the government changed its mind. You used that. So, I mean, at one level, maybe you convinced two circuits or at least one circuit of a view. I don't know if that's what you argued in front of the second circuit. You argued the same thing in the second? Yeah, to be clear, Your Honor, and that's a really good point, Bhakta Patel comes out of nowhere. Neither the government nor Petitioner's Council in that case argued in favor of the court's position. No one argued that Guzman Chavez or, I'm sorry, Nasrallah changed the outcome. And Bhakta Patel was a divergence from second circuit precedent that had long since followed this consensus view. But then you picked up on it and argued a few, the government did not, you maybe personally, but then you argue that times. Then you had a change of heart. And now, now you're recognizing that as an outlier. Is that right? Yeah, that's fair, Your Honor. No, again, Bhakta Patel was the decision that sort of precipitated this whole thing. And to me, that's a fair sort of a fair description of how the government sort of proceeded in certain cases, including this one. At the outset, we picked up on the Bhakta Patel position, advocated for it. But nevertheless, I would point out, nevertheless, argued that the court should still exercise jurisdiction in these individual cases. And that for lots of reasons, fundamental fairness being the key. But then, obviously, yes, in consultation with the Office of the Solicitor General, the government reversed course, as it were. And but has now taken consistent positions in every, almost every circuit, as far as I know. That's, again, reflective of what we're taking, the position we're taking here. So I would call that a change of mind and a change of heart. I beg your pardon, Judge Roth. I'm sorry, I missed the first part. I would call that more a change of mind rather than a change of heart. That's fair, Your Honor. Yeah, no, I think the government wanted to make sure that its position was appropriate and consistent. And although we initially seemed convinced or sold by the reasoning in Bhakta Patel, we did change our minds and have now advocated a position that's more consistent with what Mr. McManus had taken. You have no issues with the way Duane has resolved. Oh, no, not at all, Your Honor. Not at all. I think there is a statement in my supplemental brief that makes clear that the court should adopt that as the law of the thirds. Right. Right. Thank you very much. Why don't we turn to the to the merits, Ms. Kane? Sure. Thank you, Your Honor. And again, I would like to reserve two minutes for rebuttal. Thank you. So Alyssa Kane representing the petitioner, Mr. Moreland Vidal-Medina. Mr. Vidal-Medina was severely beaten, shot at, threatened with death as a teenager and initially fled under as in 2012. Seven years later, he returned after his first order of deportation and was nearly immediately identified and targeted again for harming. I think we're all pretty familiar with the facts. Let me ask you a question. Is it true that there can be only one central issue or can there be more than one issues of fear that can play a role in saying I don't want to go back? Can it be both the beating and the family history or can it just be the one? I think it can certainly be both, Your Honor. I think that the respondent, the petitioner, I'm sorry, in this case can have many reasons to fear returning to under as the end. I think you're getting to whether or not his his family membership was one central reason for his fear of return. If his fear of return is based solely on his on his beating at the hands of gang members when he was 13 years old, their express reasoning at the time that they told him was that he was no longer working for that for him. However, if his other fear is if his fear of return is also based on multiple threats to himself and his family member by gang members, his family members were snitches that they had that they knew that his family members had made reports about them to the police and that that was a reason for them to threaten him. And with death, then I think that is also a central reason for him to fear return to under as. And I think both of those. Is it your position that it was clear for the VIA to say there is just one central reason and that's all we will consider? That's right, Your Honor. I certainly this court's precedent has held at least one central reason is sufficient to show nexus. If the if the if the the respondents particular social group, the threats based on the respondents particular social group, which the judge found his family membership was a particular social group in this case. If threats based on that ground are at least one central reason, then he then the respondent has established nexus to a particular ground. And I think in this case, yes, but here, I mean, the governing standard of review is the substantial evidence standard. Right. And so and that's that's a very agency friendly definition basically says, look, you know, are we left? You know, is there a way to trace a pathway to the agency's finding that's rational? That's how I understand it. If you can trace a way to get where they got on the record before them, that's rational. You may disagree with it. You may think it's not persuasive at all. But if if all we're doing is coming down and wanting to reweigh facts in a certain order or do something like that, then that's not something that just kind of in the division of labor among the review process that we get a chance to do. And so substantial evidence is remarkably deferential to agencies. And so here the agency on, you know, I think two occasions, you know, on its on its two tiers of review said, yeah, we actually can chart a path here where there's no withholding and there's no cat. So how does how does what they do not meet the substantial evidence standard? I understand that, Your Honor, and I do agree that the standard is extremely deferential to the agency. The standard is no reasonable fact finder could conclude that the agency's factual findings were correct. I think in this case, the agency was disregarding substantial portions of the evidence in this case in order to reach the conclusion that there was only one central reason and that that one central reason was the respondents refusal to participate in gang activities. If we were going to remain. Go ahead. I'm sorry. Go ahead. Didn't they imply also that the rule was that we will focus on the one central reason. We won't consider the other reasons. I do believe that that is part of what the BIA was saying, that the. I don't know if their interpretation of the facts in this case was that the respondents family membership was tangential at best. If that's the case, then that would not constitute one central reason. But I it their reasoning disregards the idea that there could be another central reason in this case. That is not that that is not based on the respondents refusal to participate in gang and gang membership. So at one level. Oh, go ahead. No, no, go ahead. Go ahead, Judge. So so maybe if if if your challenge is, I mean, Judge Roth opened this somewhat early on by saying, you know, can there be multiple central reasons that would qualify as one central reason? And if what you're saying, though, is the agency's disregard wasn't so much of disregard of facts, I think I think we can see that they they consider a lot of fact. And I think they assessed a lot of things they heard from people. But if you say that maybe they were misguided because they thought there was only one central reason, then that might not be so much a mistake. There could only be one an individual central reason instead of multiple that that's more a dispute, a law than a dispute of fact. So is your challenge really one in law or is it grounded in fact? If the the if the BIA is understanding is that there is only one central reason. And I think that is that is a valid reading of their of their decision that the central reason, as opposed to at least one central reason. Right. And if that's the case, I think this case would certainly be required to be remanded for reassessment because there this this court's precedent has certainly established that there can be more than one central reason for persecution of law rather than an issue of fact. That's saying there can only be one central reason is an issue of law rather than an issue of fact. So it's an issue that we now on the Court of Appeals can consider, whereas if it were simply a factual finding, that is not the area where our review extends. That's right, Your Honor. And. You know, I can. What what did they ignore? Could you just point this to some of the evidence in the record that you suggest they ignored? Your Honor. So I think there are several instances in the testimony that the respondent made it clear that he his family had been clearly labeled as people who report to the police, people who are working activity to the police snitch, as he called them. And that is at 145. And 369. So 369 was the original merits hearing. In this case, he specifically stated that the that his grandmother was killed because she reported to the police. The police made her report public and the gang members therefore became aware of her report, which is a reasonable consequence of the police making a report like that public. She reported the murder of her nephew to the of her son, my apologies, of her son to the police, and they made her report public and there and she was killed several days later. The following page 370 in the testimony, there is the Mr. States that when they attempted to return to the family's home to collect belongings, gang members refused to allow them to collect the family's belongings so that they were the family was all snitches and that they knew what they had done. And. The, and this, I do just want to point out this also ties into the respondents cat argument, which I also believe is a isn't is not a reasonable determination that the under and authorities did not acquiesce or consent to the to the torture or harm of the respondent and his family members. The judges and the conclusion in this case that the because they're under and government has attempted to remediate their police force that they have made some strides in. In lessening the corruption of their police forces means that they cannot possibly acquiesce or consent in this case, and the judges and the VA is requirement. Apparently that the respondent make his own individual police report in order to qualify for cap protection. I think that is just against this court's precedent. I think that's against the weight of the evidence. And I certainly think that the, the apparent requirement that the respondent make a police report is should not should not be allowed to stand there is the respondents family members made police reports on three separate occasions, and on all three occasions, they experienced consequences. How much earlier were those how much earlier were those police reports. Sure, your honor. So, the first police report was in 2012. I'm sorry. Was very early on that was in 2005, I believe. When the respondent was a very small child that's when that's when the grandmother made her first police report. I think she spoke to the police in July of 2003 2003. Yes, yes. Years later, that was in 2012, his cousin made a made a report to the police about extortion threats that he was receiving. Around the same year, the respondents mother, or the minister, I apologize. So he's just saying responding. Mr Vandell Medina's mother made a made a police report regarding his regarding Mr Vandell Medina's cousin's murder. And at that point, the respondent Mr Vandell Medina claims he was that's that's when the gang became aware again that he was still alive, that he that he was called to their attention again. And at that point, he fled. And then, but then he returns to Honduras right. That's right, your honor he returned seven years later, and within months of his return he was again targeted for harm. But, but but your position, I guess, is what was your returns like circuit 2019 Do I have this roughly right something like this. Yeah. And so your position is that the reports made by different people who are family members in 2003 2012 and 2012 or 2013. Obviate the need for him to file a police report after he leaves the country and returns, about seven years later in 2019 the answer is the police should just know he doesn't need to make a report, and we can just infer acquiescence. At that point in time because of the reports in 03 12 and 12 or 13. Well, your honor, I'm not saying that he that the police would certainly have ignored or report, or, or, I don't think I don't think that's the inference that we need to draw here I think the inference is that it was reasonable for the, for the, for Mr Vandell Medina to be afraid of making a police report, because there was no there's no indication in, in anything that has been presented to the core of the country can that corruption has lessened to the point that that the same thing would not happen. I don't, I don't think it was reasonable for to ask him to risk, making a police report because that making the police report in the past directly led to the harm. What was he living a different part of Honduras in 2019 he wasn't was saved anymore was he. He, that's correct he he had moved to Santa Barbara at that point it's a different city. And so if he's in Santa. So, so, so, in the previous reports were made to the less a bar authorities, right, right, not Santa Barbara or anybody else like that. And so, so that the assumption is that we're going to make. So the rule is that because the less a bar police may have taken no action or I think he has strong words it amounted to a death threat right there's something along those lines he says reported police. I guess now we're supposed to say that that in 2019. We know, and that there's not substantial evidence that that that would suggest that there was that I guess there was acquiescence we know we can say despite the substantial evidence center there was acquiescence by the Santa Barbara police, that that would be a death threat to him that's that that seems like the whole thing you're asking for. Well, Your Honor, I think, first of all, I think part of that question is, does, does the under and police divide administratively at that like is there such administrative division that that there's really any significant difference between reporting to police who are physically located in the same versus police who are physically located in Santa Barbara, they're all part of the same National Police Force. And I think that the. I think I think the conditions report suggests that some cities are much more corrupt than others. Right. I mean, what San Pedro Sula is supposed to be really bad. It from what I understand I think let's save us not not quite as bad as San Pedro Sula. And so we know that there is variation regional variation in Honduras and in fact sometimes one of the criteria that courts look to determine whether or not things can happen is the possibility of relocating to a different region. So, on substantial evidence review, like why isn't it just, you know, why can't we chart a rational course to why the agency would deny cat relief, when it would say your last report was, you know, seven years earlier to a different police department and different region we, you know, without going to the police again. We can't, we can't validate that that was have the same death threat consequences is you may even if we believe you earlier that it would this go around. Well, I think the question that is, is it, is it really reasonable for the for somebody in the petitioner shoes to to believe that he, that it would be safe in the same in the way that you're suggesting when there's no way to know until after you make the police report, whether or not it will have deadly consequences. If, if it happens in some cities and it doesn't happen in other cities. The, the way to know that is to take the risk is to is to enter into the lottery as we put it in our in our brief of whether or not the police department that you're reporting to this specific the specific office that you're reporting to has corrupt agents whether or not the specific department that you're reporting to has people who are on the gang's payroll because there is substantial evidence that there are police officers throughout the country who who are engaging in corrupt activities and who are in the country conditions report I think also suggest that that that the hundred government is taking efforts against corruption is trying to ameliorate that situation so so are we supposed to, you know, I don't, we can't just, you know, we aren't going to disregard that to are we. I think that the. There have been anti corruption efforts at various times throughout under is this history, and none of them have significantly improved the situation. I mean, between when what happened in 2012 and what's happening in at the time of the respondents merits hearing and what's happening in 2022 when we were compiling all of our country conditions reports corruption is still a significant problem in under is, and the efforts that they've been taking over the last, you know, decade or two to address those issues have not significantly improved the situation on the ground. So it's just where is your client right now. My client is currently to my knowledge he's currently located in under us. He. This court denied his stay of removal. Back when we when we first petitioned for that, and the respondent elected not to request reconsideration he had at that point been detained for a very significant amount of time he had been over two years at that point. In federal custody and then a nice custody he was serving a reentry sentence for nine months and then was in was in ice custody. Throughout his removal proceedings up until the VA is final decision. He, the record also shows he has pretty significant mental health issues that dealing with he was dealing with he was very depressed, and he elected not to not to fight his deportation. Understood. So, I'm sorry let's judge Fitz has another question why don't we hear from Mr. I'm going to cut you off there. No, no, I'm good. Thank you very much. Judge Roth. And I believe my tech my time actually is. We'll hear from him rebuttal, Mr. Thank you again, Your Honor may please the court. I do believe that that with regard to both withholding of removal and cat protection, this is strictly a substantial evidence question that those are fact based determinations that the court can only reverse if the record compels a contrary conclusion. This is not a case in which the board ostensibly ignored any relevant evidence. Again, the court applies a presumption of regularity and presumes that the, the board and the IJ reviewed all of the evidence presented unless that record compelling he suggests otherwise there's nothing like that here. More importantly, with respect to the legal issue that judge Roth asked about that Miss Cain raised the board sites the one central reason standard multiple times in its decision as does the immigration judge there's no confusion here about their possibility of mixed motives, but that petitioner failed to meet his burden of establishing that family membership or any other protected ground was in fact one central reason in order to satisfy that standard. One central reason must be both a but for cause and not subordinate or tangential to other stated or other obvious reasons here there's no and at most the board's determination is that kinship was incidental or tangential to the other stated reasons that are borne out by the record. There's no compelling proof that petitioner was targeted because of family relationship per se or his family that family status centrally motivated the gang to act. The intent there must and this is based on board precedent and this court's decision in the land, the persecutors intent there must be to overcome the protected characteristic of the family membership. And this is a quote from La, which I think really sums up the government's position on nexus if the persecutor would have treated the applicant, the same if the protected characteristic of the family did not exist. Then the applicant has not established a claim on this ground and in this case, whether you obviously were focused on exactly what happened in the petitioner himself, but even in the context of what happened to his other family members. The record reveals that everyone was targeted because of what they did not because of who they are. And that's why family membership, the family membership claim fails here. Again, talk about the context the uncle in 2003 killed for refusing recruitment, the grandmother killed for reporting that to the police and being, I guess, victimized in a way, you know, making that report public. The cousin, the taxi driver killed later for refusing to pay extortion and reporting to the police. Petitioner himself when he discusses the initial beating, which occurred again only after he refused to continue being an errand boy for the gang. He said, and this is quoting from his testimony, they told me, if you're not with us, you're against us, you're useless. The reason for targeting him was because he refused to continue cooperating. And that type of motivation is what tracks every instance of alleged persecution in this case, whether it's against petitioner himself or his family members. There's no question that the gangs, at least according to petitioner's credible testimony, there's no question that the gangs may have marked the family as a group of snitches. But the question is whether that animated their decision to act, whether that was the motivation for seeking the alleged persecution. And again, coming back to Judge Schiff's point, the question for the court is only whether a reasonable adjudicator could have found as the agency did. If so, then the record cannot possibly compel a contrary conclusion. And it was certainly reasonable for the agency here to decide that whatever else underlay the original decision to act, petitioner's persecution or alleged persecution was not centrally motivated by his kinship. And ultimately, that's dispositive of the withholding claim. The same sort of substantial evidence review applies to the CAT determination. And again, the question is only could the agency have reasonably reached the conclusion that it did. And because acquiescence is dispositive and because it is petitioner's burden, the absence of a report to police here is not some sort of additional requirement that the IJ or the board imposed on petitioner. It's a gap in evidence that ultimately means that he can't sustain his burden of proof. He has to establish a clear probability that it's more likely than not he will be singled out for torture and that that torture will occur either by or with the acquiescence of the Honduran government. And here the agency reasonably concluded, particularly in light of the country conditions evidence that Judge Phipps mentioned, that petitioner's CAT claim fails at the acquiescence phase. As I think Judge Phipps was suggesting, the country conditions reports show that the government has responded with, quote, an iron fist security strategy to combat organized crime and gang activity. There was a pronounced effort to break up major cartels and gangs and that they, quote, investigated and prosecuted many of the crimes that petitioner alleged happened in this case. And of course, happens to thousands of other Hondurans sort of annually. And again, we come back only to the highly deferential substantial evidence standard. There is no legal error in the agency's analysis. The only question and the way that Ms. Cain presented it is petitioner obviously disagrees with the result. But does the record compel a finding in his favor? And because the answer to that question is no, the court has no choice but to uphold the agency decision and deny the decision review on the merits. I recognize, Your Honor, that we didn't spend any time on the 1252B1 question when we talked about jurisdiction. I will only invite the court to ask questions if it has any about that. But other than that, we're comfortable with arguments in both our original answering brief and the supplemental brief, unless the court has additional questions. Thank you, Mr. McMast. Ms. Cain? Thank you, Your Honor. So I'd like to start with the idea that the family membership could not have been a but-for cause in this case. I think it definitely was a but-for cause of the targeting of him after he was after he was beaten. So there are three separate incidents of harm in this case. The first was to the petitioner directly. The first was when he was initially beaten in 2008-2009. That was when he was being targeted by gang members for recruitment. He was a young teenager at the time. In that case, certainly their express statements, as I stated before, were that he was being punished for failing to join the gang at that time. Three to four years later, in 2012, he was targeted again after the gang became aware of him. They shot at him and threatened him with death. And he was actually shot at that time. Seven years later after that, he returned to the country and was targeted again. He had not had any interactions with gang members at that time. He had not done anything at that time to draw their attention. They simply became aware that he was living in their area, went to his home, and attacked his partner who was living with him at the time. The idea that every single one of these incidents, five years apart and seven years later, were solely on account of him refusing to join the gang at one time in his youth, I think is just against the weight of the evidence. Their knowledge of him, their awareness of him as a person who was against them, and who was because of his family membership. It's because his family stood out to them and was significant to them as people who had resisted their efforts in the past, and people who had reported them to the police in the past. I apologize. That's all I have time for. Thank you, Counsel. Mr. Newman, thank you very much for your amicus and your pro bono work. Please extend our thanks to the members of your firm who supported your amicus brief. Thank you very much. Thank you. So we will adjourn and we will circle back to you folks in the not too distant future. Thank you very much for joining us today.